IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-426-D

STATE AUTO PROPERTY AND )
CASUALTY INSURANCE COMPANY, )
 )
               Plaintiff, )
 )
v. ) **ORDER**
 )
RELLA J. HASH, and )
KEITH MATTHEW THOMAS, )
 )
               Defendants. )

On April 6, 2015, State Auto Property and Casualty Insurance Company ("plaintiff" or "State Auto") filed an amended complaint against Rella J. Hash ("Hash") and Keith Matthew Thomas ("Thomas") [D.E. 26]. State Auto seeks a declaratory judgment that an insurance policy it issued to Powers Landscaping & Maintenance, L.L.C., does not cover injuries at issue in a state lawsuit that Hash filed against Thomas arising from a car accident. See Am. Compl. [D.E. 26] ¶¶ 33–38. State Auto moved for partial summary judgment [D.E. 30–32], Hash responded [D.E. 36] and State Auto replied [D.E. 38]. As explained below, the court grants State Auto's motion for partial summary judgment.

I.

On March 2, 2012, Thomas and Hash had a car accident near Roanoke Rapids, North Carolina. [D.E. 26-1] 1. At the time of the car accident, Thomas was using a vehicle owned by his employer, Powers Landscaping, L.L.C. ("Powers Landscaping"). Resp. Opp'n Mot. Summ. J. [D.E. 36] 2; see [D.E. 32-1] 6–9; [D.E. 36-1] 7–10. Thomas had permission from Powers Landscaping

to use the vehicle in the course of his duties as a driver and laborer for Powers Landscaping. See [D.E. 32-1] 12. When the accident occurred, however, Thomas was using the vehicle to go fishing near Roanoke Rapids, and he had been drinking alcohol. See [D.E. 26-1] 1; [D.E. 36-1] 10–12.

At the time of the accident, Powers Landscaping had an automobile insurance policy with State Auto. See [D.E. 26-2] 11. The policy covers accidents involving any "covered auto" driven by the insured or by "[a]nyone else . . . using [the 'covered auto'] with [the insured's] permission." See [D.E. 26-2] 31. "Covered autos" include vehicles named by Powers Landscaping in the policy, vehicles "lease[d], hire[d], rent[ed] or borrow[ed]," and non-owned vehicles used "in connection with [the] business." [D.E. 1-2] 13, 30. The policy also contains a list of "principal and occasional" drivers of Powers Landscaping vehicles, including Thomas. See id. 15, 25. This list, however, was "for underwriting purposes only" and did not grant those employees on it "insured status or coverage." See id. 15.

As a result of the accident, Thomas was arrested and incarcerated. [D.E. 36-1] 13. Following his release from jail, Thomas contacted Powers Landscaping to apologize for the accident and to ask whether he could return to his job at Powers Landscaping. Id. at 13–14. Powers Landscaping allowed him to do so. Id. 14.

On July 23, 2014, Hash filed an amended complaint against Thomas in Wake County Superior Court concerning injuries she suffered as a result of the accident. See [D.E. 26-1] 1. On April 6, 2015, State Auto filed an amended complaint in this court against both Hash and Thomas, seeking a declaratory judgment that the State Auto insurance policy does not cover Hash's claims in the underlying state action. See [D.E. 26] ¶ 38. On June 1, 2015, State Auto moved for partial summary judgment. See Mot. Summ. J. [D.E. 30]; Fed. R. Civ. P. 56.

2

In its motion for partial summary judgment, State Auto contends that Powers Landscaping's "Business Auto insurance policy" does not cover the claims in Hash's lawsuit against Thomas beyond the minimum limits required under state law. See Mot. Summ. J. 1. In support, State Auto argues that Thomas was not the "named insured" on the policy, that Thomas was not driving the vehicle with Powers Landscaping's permission at the time of the accident, and that Thomas was not using the vehicle in furtherance of Powers Landscaping's interests at the time of the accident. See Mem. Supp. Mot. Summ. J. [D.E. 31] 3–6.

In opposition, Hash does not argue that Thomas is the named insured on the policy or that Thomas was using the vehicle in furtherance of Powers Landscaping's interests at the time of the accident. Rather, Hash argues that Thomas had permission to use the Powers Landscaping vehicle when the accident occurred. Thus, according to Hash, the policy covers the injuries at issue in Hash's state-court action against Thomas. See Resp. Opp'n Mot. Summ. J. 3–10. In support, Hash filed Thomas's deposition transcript of June 15, 2015 [D.E. 36-1].[1]

II.

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the non-movant and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

---

[1] State Auto moves to exclude Thomas's deposition testimony, claiming that the deposition violated the scheduling order's mandate that "all discovery . . . be completed by May 15, 2015." [D.E. 38] 1–2. The motion to exclude is denied.

3

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48.

The party seeking summary judgment initially must demonstrate an absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. Once the movant meets its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Nor will a "mere . . . scintilla of evidence in support of the [nonmoving party's] position . . . ; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

State Auto's policy with Powers Landscaping covered a period from April 2, 2011, until April 2, 2012. See [D.E. 26-2] 11. The insurance policy covers the policy holder for any "covered auto" and "[a]nyone else . . . using with [the insured's] permission a covered auto." See [D.E. 26-2] 31 (quotations omitted). Whether Thomas was using the vehicle with the insured's permission on March 2, 2012, is a question of state law. See, e.g., Francis v. Allstate Ins. Co., 709 F.3d 362, 369–72 (4th Cir. 2013).

North Carolina law recognizes two ways an insured may confer permission to use a vehicle. First, an insured may give "express permission," where the insured communicates permission "in an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference." Hawley v. Indemnity Ins. Co., 257 N.C. 381, 384, 126 S.E.2d 161, 164 (1962).

4

As for express permission, Powers Landscaping issued a written company policy and granted limited "permission" for employees to use its vehicles. See [D.E. 32-1] 12, 22–23. Powers Landscaping, however, expressly prohibited "personal use" of its vehicles. See id. at 22–23. Indeed, Hash does not argue that Powers Landscaping expressly granted permission to Thomas to use its vehicles for his personal use. Rather, Hash argues that Powers "never told Thomas that [the vehicles] could not be used for personal use." Resp. Opp'n Mot. Summ. J. 7.

The court rejects Hash's permission-by-silence argument. North Carolina law requires that express permission be "affirmative [in] character, directly and distinctly stated, [and] clear and outspoken." Hawley, 257 N.C. at 384, 126 S.E.2d at 164. Accordingly, Thomas did not have express permission to use Powers Landscaping's vehicle for personal use.

North Carolina law also recognizes that an insured can give "implied permission." See, e.g., Bissette v. Auto-Owners Ins. Co., 208 N.C. App. 321, 328, 703 S.E.2d 168, 173 (2010); Nationwide Mut. Ins. Co. v. Land, 318 N.C. 551, 560–61, 350 S.E.2d 500, 505 (1986). Implied permission "involves an inference arising from a course of conduct or relationship," where "there is mutual acquiescence or lack of objection under circumstances signifying assent" to vehicle use. See Nationwide Mut. Ins. Co., 318 N.C. at 560–61, 350 S.E.2d at 505 (quotation omitted).

Hash makes three implied-permission arguments concerning the vehicle. First, Hash argues that Thomas was unaware of the company policy regarding personal use and that Powers Landscaping "never told defendant Thomas that he could not use the vehicle for personal use." See Resp. Opp'n Mot. Summ. J. 4.

Even if Thomas was ignorant of the company policy, Thomas's ignorance does not constitute "mutual acquiescence or lack of objection" by Powers Landscaping regarding Thomas's personal use of company vehicles. See, e.g., Nationwide Mut. Ins. Co., 318 N.C. at 560–61, 350 S.E.2d at

5

505 (quotation omitted); Ins. Co. of N. Am. v. Aetna Life & Cas. Co., 88 N.C. App. 236, 241–42, 362 S.E.2d 836, 839 (1987). Thus, the argument fails.

Second, permission may be implied when the employer (1) knew of at least one prior instance of impermissible use by the employee and (2) chose not to object to the impermissible use through punishment or reprimand. See, e.g., Ins. Co. of N. Am., 88 N.C. App. at 241–42, 362 S.E.2d at 839. However, the record contains no evidence that, before March 2, 2012, Thomas had driven company vehicles for personal use, much less that Powers Landscaping knew of a prior violation and chose not to reprimand or punish Thomas. In fact, the record suggests just the opposite. See [D.E. 36-1] 12; compare Ins. Co. of N. Am., 88 N.C. App. at 241–42, 362 S.E.2d at 839 (noting that a written agreement to the contrary undermined implied permission), with [D.E. 36-1] 18–19 (acknowledging that Thomas received a written copy of the company policies, prohibiting personal use of company vehicles, when he began working for Powers Landscaping), and [D.E. 32-1] 22–23 (reciting written policy language). Thus, the argument fails.

Third, Hash argues that Powers Landscaping's conduct following the accident indicates that Thomas had implied permission to use the vehicle at the time of the accident. In support, Hash cites three facts: (1) Powers Landscaping "did not take out any criminal charges against the defendant . . . at the time of the accident;" (2) Powers Landscaping "allowed defendant Thomas to continue work for Powers Landscaping within two weeks of his release from jail for the accident;" and (3) Powers Landscaping "did not have Thomas removed from the insurance policy." See Resp. Opp'n Mot. Summ. J. 5–7.

The court rejects Hash's argument. At most, these actions or inactions suggest acquiescence that could apply prospectively after the accident. In other words, when Thomas drove the vehicle on March 2, 2012, Powers Landscaping had never permitted Thomas to return to work with no

6

apparent sanction after impermissibly using a Powers Landscaping vehicle. As such, Hash's allegations regarding Powers Landscaping's post-accident treatment of Thomas fail to raise a genuine issue of material fact.

Finally, State Auto also issued a "Business Auto Policy Plus Endorsement" to Powers Landscaping in addition to its basic policy. See [D.E. 26-2] 12, 13, 62–65. The endorsement extended coverage to otherwise non-covered vehicles used by employees acting in the insured's "business or . . . personal affairs." Id. 63. Both parties argue about the Business Auto Policy Plus Endorsement, but Hash misapprehends State Auto's argument concerning the Business Auto Policy Plus Endorsement. Compare Mem. Supp. Mot. Summ. J. 3–6 (arguing that Thomas neither had permission to use the vehicle nor did he use the vehicle for Powers Landscaping's business or personal affairs), with Resp. Opp'n Mot. Summ. J. 7–10 (arguing that State Auto has ignored the permission language altogether and replaced it with an inquiry into whether Thomas's use of the vehicle was in furtherance of Powers Landscaping's business or personal affairs). Moreover, Thomas's use of the vehicle on March 2, 2012, was not in furtherance of Powers Landscaping's business or personal affairs. Cf. MGM Transp. Corp. v. Cain, 128 N.C. App. 428, 430–31, 496 S.E.2d 822, 824–25 (1998). Thus, the Business Auto Policy Plus Endorsement does not cover injuries arising out of the car accident.

III.

In sum, plaintiff's motion for partial summary judgment [D.E. 30] is GRANTED. The injuries arising out of Thomas's use of the Powers Landscaping vehicle involved in the car accident with Hash are not covered by the State Auto insurance policy beyond the minimum limits required under state law.

7

SO ORDERED. This **28** day of March 2016.

                                              JAMES C. DEVER III
                                              Chief United States District Judge